UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE RIVERKEEPER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WALLACE D. TWEDEN, TRUSTEE of the | ) |
| WALLACE D. TWEDEN 1991 REVOCABLE | )   JURY TRIAL DEMANDED |
| TRUST, and | ) |
| 4M ACQUISITIONS 16-1, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

The Plaintiff, Tennessee Riverkeeper, Inc. ("Plaintiff" or "Riverkeeper"), states as follows:

### NATURE OF THE CASE

1. This is a citizen's suit, brought pursuant to the provisions of Section 505(a)(1) of the Federal Water Pollution Control Act, also known as the Clean Water Act (hereinafter "CWA"), as amended, 33 U.S.C. § 1365(a)(1), and section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), to address violations of those acts by the Defendants, for violations of the CWA and the Tennessee Water Quality Control Act of 1977, as amended, § 69-3-101, *et seq.*, and the regulations thereunder, and under section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), for violations of RCRA's prohibition on the operation of an open dump.

2. Wallace D. Tweden, Trustee of the Wallace D. Tweden 1991 Revocable Trust and 4M Acquisitions 16-1, LLC, (herein, collectively referred to as "Tweden") are violating the CWA and RCRA due to allowing the discharge of pollutants to waters of the United States and the State,

1

without first obtaining a National Pollutant Discharge Elimination System ("NPDES") permit for that point source discharge.

3. These CWA violations cause the Site to constitute an open dump, which is prohibited under RCRA.

4. Tweden is in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et seq.,* of Title 40 of the Code of Federal Regulations.

5. These laws prohibit any facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES.

6. The Site is also an open dump because solid waste was deposited at the Site which is not a sanitary landfill meeting the required regulations. 42 USC 6944(b).

7. Riverkeeper seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of litigation costs, including attorney and expert witness fees, for Defendant's repeated and ongoing violations of the CWA and RCRA.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over the claims set forth in this Complaint by virtue of Section 505(a)(1) of the Federal Water Pollution Control Act ("FWPCA"), also known as the Clean Water Act, 33 U.S.C. §1365 (a)(1), Section 7002 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(A), and by virtue of 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States).

9. The relief requested is authorized pursuant to 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a

declaration), 33 U.S.C. § 1319(b), 1365(a) (injunctive relief), 33 U.S.C. § 1319(d), 1365(a) (civil penalties), and 42 U.S.C. § 6972(a)(1), which provides:

> The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to in paragraph (2), as the case may be, and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

10. Venue is appropriate in the Middle District of Tennessee pursuant to 33 U.S.C. § 1365(c)(1) and because the acts, omissions, and/or violations complained of herein occurred, and continue to occur, within Nashville, Davidson County, Tennessee.

**NOTICE**

11. Plaintiff, Tennessee Riverkeeper ("Riverkeeper") has complied with the pre-suit notice provisions of the CWA and the RCRA.

12. Pursuant to 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. Part 135, 42 U.S.C. § 6972(b)(1), and 40 C.F.R. 254, Riverkeeper, on March 25, 2024, gave Defendant notice of the violations alleged herein and its intent to sue after the expiration of sixty (60) days ("March Notice").

13. At the same time, Riverkeeper mailed a copy of the March Notice to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Commissioner of the Tennessee Department of Environment and Conservation ("TDEC").

14. Service of notice on Defendant was by certified mail.

15. More than 60 days, and less than 120 days, have passed since the March Notice was served on Defendant and these agencies. The March Notice is attached hereto as Exhibit A and incorporated by reference herein.

16. Since Riverkeeper gave notice, the violations complained of have not ceased, and are ongoing and neither the EPA nor the State of Tennessee has commenced and diligently prosecuted a civil or criminal enforcement action in a court of the United States or a state for the violations.

17. Furthermore, prior to the March Notice, neither the EPA nor the State of Tennessee commenced and diligently prosecuted an administrative action under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations alleged herein.

18. Neither the EPA nor the state has issued a final order not subject to further judicial review and Defendant has not paid a penalty assessed under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations.

19. Riverkeeper will mail, contemporaneously with the filing hereof, a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of EPA Region 4, the Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

## PARTIES

20. Plaintiff, Tennessee Riverkeeper, is a non-profit corporation formed in the State of Alabama and granted authority to operate in Tennessee by the Division of Business Services, State of Tennessee, as a non-profit foreign corporation.

21. Riverkeeper has approximately 5000 members, and is dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries.

22. Riverkeeper actively supports effective enforcement and implementation of environmental laws, including the CWA and RCRA, on behalf of and for the benefit of its members.

23. Members of Tennessee Riverkeeper have recreated in, on or near, or otherwise used and enjoyed, or attempted to use and enjoy, the Cumberland River, (and its tributaries) in the past, and they intend to do so in the future.

24. They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in the Cumberland River and its tributaries.

25. The quality of these waters directly affects the recreational, aesthetic, and environmental interests of certain members of Tennessee Riverkeeper.

26. The recreational, aesthetic, and environmental interests of certain of Tennessee Riverkeeper's members have been, are being, and will be adversely affected by the Defendant's continued violation of the NPDES permit requirements, Tennessee NPDES rules, the CWA, and RCRA as alleged in this Complaint.

27. Defendant's illegal discharges from the Site enter Stoners. Stoners Creek is a tributary of Stones River, which is a tributary of the Cumberland River.

28. The violations alleged herein have had a detrimental impact on Tennessee Riverkeeper members' interests because the violations have adversely affected and/or diminished

aquatic life and water quality in these waters and have made these waters less suitable for fishing, boating, swimming, wading, walking, observing nature, or relaxing.

29. Riverkeeper's members would recreate more in and around these waters but for Defendant's illegal discharges of pollution.

30. The Declaration of Rus Snijders is attached hereto as Exhibit B and incorporated by reference herein.

31. Mr. Snijders is a member of Tennessee Riverkeeper who loves to fish the waters around Nashville, including Stoners Creek and Stones River.

32. Mr. Snijders has a guide service where he takes clients on the Harpeth River, Buffalo River, Caney Fork, Percy Priest, Old Hickory Lake, the Cumberland River, and other area waters.

33. Mr. Snijders is concerned about pollution in Stoners Creek and Stones River. When he kayak fishes in the summer, he likes to take a dip to cool off. He does not want to swim in polluted water. He is also concerned about the effects of pollution on the environment and aquatic wildlife. He likes for the fish to be healthy and plentiful, and pollution can affect that.

34. His concerns would be lessened, and his enjoyment of his activities along Stones River and Stoners Creek would be improved, if Tweden stopped discharging pollution into the water.

35. Riverkeeper is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g), 1365(a), and 42 U.S.C. § 6972(a), with standing to bring this action.

36. The Wallace D. Tweden 1991 Revocable Trust and 4M Acquisitions 16-1, LLC, both with principle offices in Round Rock, Texas, are commercial property owners doing business in Nashville, Tennessee, within the Middle District of Tennessee.

37. Tweden is a "person" within the meaning of 33 U.S.C. §§1362(5) and 1365(a)(1).

## STATUTORY BACKGROUND

38. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge is in compliance with various enumerated sections of the CWA.

39. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

40. The State of Tennessee has been delegated the authority to implement the permitting programs of the CWA by the EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b).

41. The Tennessee Department of Environment and Conservation (TDEC) is the water pollution control agency for purposes of the CWA and has enacted regulations pursuant to that authority implementing the CWA's permitting programs within the State of Tennessee.

42. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for a violation of an effluent standard or limitation under Chapter 26 of Title 33. 33 U.S.C. § 1365(a).

43. Section 4005 of RCRA, 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), prohibit the operation of an open dump for land disposal of solid waste, as the term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part 257.

44. A citizen suit, pursuant to 42 U.S.C. § 6972, may be brought for violations of RCRA.

45. A landfill that does not comply with applicable regulations (40 CFR 257.1, *et seq.*), is defined as an "open dump." 40 CFR 257.2.

46. RCRA regulations define the term "open dump" as any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under section 6944 of [Title 42] …" 42 USC 6903(14).

47. Promulgated under Title 42 section 6944 are the regulations found at 40 CFR 257.1 thru 257.4 which were adopted for determining which solid waste disposal facilities and practices pose a reasonable probability of adverse effects on health or the environment under sections of RCRA. 40 CFR 257.1.

48. These regulations prohibit a facility from discharging pollutants into waters of the United States in violation of the requirements of the NPDES. 40 CFR 257.3-3.

49. RCRA regulations define the term *"Disposal"* as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 40 CFR 257.2.

50. RCRA defines the term "solid waste" as "any garbage, refuse… and other discarded material …" 42 USC 6903(27).

51. Facilities failing to satisfy any of the criteria in §§257.1 through 257.4, §§257.5 through 257.30, or §§257.50 through 257.107 are considered "open dumps", which are prohibited

under section 4005 of the Act. 40 CFR 257.1(a)(1).

52. Practices failing to satisfy any of the criteria in §§257.1 through 257.4 or §§257.5 through 257.30 or §§257.50 through 257.107 constitute "open dumping", which is prohibited under section 4005 of the Act. 40 CFR 257.1(a)(2).

53. "For purposes of section 4004(a) of the Act, a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the National Pollutant Discharge Elimination System (NPDES) under section 402 of the Clean Water Act, as amended." 40 CFR 257.3-3(a).

## GENERAL ALLEGATIONS

54. This is an action for declaratory judgment, injunctive relief, civil penalties, and litigation costs, including reasonable attorney's and expert witness fees, to enforce provisions of the CWA, RCRA, and regulations adopted pursuant to said acts.

55. Tweden is in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et seq.*, of Title 40 of the Code of Federal Regulations, which prohibit a facility from discharging pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the NPDES.

56. As set forth below, and in the March Notice, Tweden violated the CWA by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state which are not authorized by permit.

57. Tennessee Riverkeeper's scientist observed a discharge of discolored water into Stoners Creek on June 18, 2019, June 6, 2023, June 27, 2023, and September 22, 2023.

58. The location is on Stoners Creek at or about coordinates 36.17903º N, 86.63135º W. This location is seeps or springs on the banks of the creek flowing into the creek.

59. Nashville Planning Department parcel records reveal that this location is owned by Tweden. (Herein referred to as "the Site").

60. Riverkeeper's scientist collected water samples on June 6, 2023 for conventional pollutants and on June 27 and September 22, 2023 for PFAS.

61. Commercial laboratory analysis of the water samples from the June 27 sample showed the following results: Perfluorooctanoic acid (PFOA) of 49.2 ng/L and Perfluorooctanesulfonic acid (PFOS) of 50.5 ng/L. The analysis also showed high levels of other per and polyfluoroalkyl substances for total PFAS of 522.67 ng/L. The lab also reported detectable levels of Total Nitrogen (5.98 mg/L), Ammonia as N (4.24 mg/L), Chemical Oxygen Demand (29.1 mg/L), Total Kjeldahl Nitrogen (5.20 mg/L), and Phosphorous as P ( 0.225 mg/L). See March Notice, Attachment A (Exhibit A).

62. Commercial laboratory analysis of the water samples from the September sample showed the following results: PFOA of 69.7 ng/L and PFOS of 67.8 ng/L. The analysis also showed high levels of other per and polyfluoroalkyl substances and total PFAS of 612.01 ng/L. (No other parameters were tested at that time.) See March Notice, Attachment B (Exhibit A).

63. The Metro Nashville Harrington Water Plant drinking water intake is just 4.5 miles downstream from the Site, near the confluence of the Stones River with the Cumberland.

64. PFAS, including PFOA and PFOS, are man-made chemicals and do not exist in nature without human intervention. The presence of PFAS in the water sample indicates that the pollutants in the waters sampled are of human origin.

65. Scientific studies have shown that exposure to some PFAS in the environment, including PFOS and PFOA, may be linked to harmful health effects in humans and animals.

66. In April 2024, the EPA finalized a critical rule to designate two widely used PFAS, PFOA and PFOS, as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act, also known as Superfund.

67. In April 2024, the EPA issued the first-ever national, legally enforceable drinking water standard to protect communities from exposure to harmful PFAS. The legally enforceable standard, called Maximum Contaminant Levels (MCLs) in drinking water for both PFOA and PFOS is 4.0 parts per trillion (ppt or ng/L), with a Maximum Contaminant Level Goal of zero.

68. In February 2024, EPA released two proposed regulations under RCRA to protect communities from PFAS and other emerging chemicals of concern. These rules would add nine PFAS, including PFOA and PFOS, to the list of RCRA hazardous constituents and would assure that EPA's regulations clearly reflect EPA's and authorized states' authority to require cleanup of the full range of substances that RCRA intended.

69. The violations set forth in the paragraphs above and in the March notice are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.

## COUNT ONE

## VIOLATIONS OF THE CLEAN WATER ACT

70. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference Paragraphs 1 through 69 above as if fully set out in this count.

71. Tweden is in violation of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and 40 C.F.R § 122.1, et seq, as well as similar provisions of Tennessee law. These laws

require that no facility shall discharge pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the National Pollutant Discharge Elimination System (NPDES).

72. On at least the following occasions, Tweden has violated the CWA by discharging contaminated leachate from the Site to Stoners Creek without an NPDES Permit authorizing the discharges. As set forth in more detail in the March Notice, Attachment A (Exhibit A), incorporated by reference herein, laboratory analyses of the June 27 and September discharges indicate the presence of pollutants consistent with industrial waste:

- June 6, 2023
- June 27, 2023
- September 22, 2023

73. No NPDES permit has been issued to allow discharges from the Site, including, but not limited to the discharges set forth above. The requirement for Tweden to obtain an NPDES permit authorizing these discharges arose at the time of its first discharge at the Site. Each day since that time is a violation of the CWA.

74. The discharges described herein go into waters of the United States, namely, Stoners Creek, a tributary of Stones River, which is a tributary of the Cumberland River.

75. For these reasons, Tweden is in violation of the CWA, and Tennessee State Law, and subject to penalties, equitable relief, and other remedies provided by the Act.

76. These violations have an adverse impact on waters of the United States and waters of the state, specifically of Stoners Creek, Stones River and/or the Cumberland River, and on the

12

Case 3:24-cv-00886   Document 1   Filed 07/22/24   Page 12 of 18 PageID #: 12

recreational, aesthetic, environmental, and pecuniary interests of Riverkeeper's members in those waterways as set out in paragraphs 28 thru 34 above.

77. Defendant should be subject to an enforcement order or injunction ordering it to fully comply with all requirements of the CWA.

78. Defendant should be subject to an enforcement order or injunction ordering it to obtain the proper NPDES permit(s).

79. Defendant should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

80. For the purpose of assessing the maximum penalty which Tweden is liable, each day that the Site has discharged pollutants in violation of its NPDES Permit and/or without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d). Each violation of the permit requirement or the regulations, as set out above, constitutes a separate violation as well as each discharge point discharging in violation of the permit or regulations.

## COUNT TWO

### VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT

81. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference Paragraphs 1 through 80 above as if fully set out in this count.

82. On information and belief there was no permit issued for landfilling operations or other discharge at the Site.

83. Tweden is in violation of section 4005 of RCRA, 42 U.S.C. § 6945, as the Site constitutes an open dump, as that term is defined in 42 U.S.C. § 6903(14) and in 40 C.F.R. Part

257. Pursuant to 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.1(a)(1) and (2), the operation of an open dump is prohibited.

84. Alternatively, and additionally, the Site constitutes an open dump, pursuant to 40 C.F.R. § 257.3-3, because, on at least the dates set out above, contaminated water from the Site has been discharged, and continues to be discharge, from a spring or springs into Stoners Creek in violation of the requirements of the CWA. The requirement for Tweden to obtain an NPDES permit authorizing these discharges arose at the time that it first knew or should have known that pollutants were being discharged into surface waters.

85. These violations have an adverse impact on waters of the United States and waters of the state, specifically of Stoners Creek, Stones River, and/or the Cumberland River, and on the recreational, aesthetic, environmental, and pecuniary interests of Riverkeeper's members in those waterways as set out in paragraphs 28 thru 34 above.

86. Defendant should be subject to an enforcement order or injunction ordering it to cease discharging pollutants into Stoners Creek.

87. Defendant should be subject to an enforcement order or injunction ordering it to remove all solid wastes dumped on their property without a landfill permit authorizing the said dumping.

88. Defendant should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

89. For the purpose of assessing the maximum penalty which Tweden is liable, each day that the Site has discharged pollutants in violation of its NPDES Permit and/or without a permit authorizing such discharges, as well as each location of such discharges, constitutes a separate

violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d). Each violation of the permit or regulations, as set out above, constitutes a separate violation as well as each discharge point discharging in violation of the permit or regulations.

## COUNT THREE
## INJUNCTIVE RELIEF

90. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference Paragraphs 1 through 89 above, as if fully set out in this count.#

91. The violations set out herein will continue unless this Court enjoins Defendant from continuing to discharge these wastes without a permit.

92. These violations have caused irreparable injury to some of Riverkeeper's members. Riverkeeper has no adequate remedy at law for the injuries caused to its members by Defendant's ongoing violations in that Riverkeeper would be forced to bring repeated and burdensome actions for each new injury to its interests if Defendant's ongoing violations are not enjoined.

93. An injunction will be in the public's interest in this case. Because Defendant is in continuing violation of the law, the equities for an injunction weigh in Riverkeeper's favor.

94. Defendant should be subject to an enforcement order or injunction ordering it to cease discharging pollutants into Stoners Creek.

95. Defendant should be subject to an enforcement order or injunction ordering it to remove all solid waste dumped on their property without a landfill permit authorizing the said dumping.

96. Defendant should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

## PRAYER FOR RELIEF

**WHEREFORE**, Riverkeeper respectfully requests that the Court grant the following relief:

a. Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that the Defendant, Tweden, has violated and is in violation of the CWA, 33 U.S.C. §1311(a), Tennessee NPDES rules, and his permit.

b. Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that the Defendant, Tweden, has violated and is in violation of the RCRA, 42 U.S.C. §6972(a)(1)(A).

c. Plaintiff Riverkeeper requests and petitions this Court to enjoin the violations and any and all illegal conduct by Defendant, Tweden, as set out and alleged in Counts One thru Three above and issue an injunction compelling Defendant, Tweden, to remedy the illegal discharges of pollutants into waters of the United States.

d. Plaintiff Riverkeeper requests and petitions this Court to issue an enforcement order or injunction ordering Defendant, Tweden to cease discharging pollutants into Stoners Creek.

e. Plaintiff Riverkeeper requests and petitions this Court to issue an enforcement order or injunction ordering Defendant, Tweden to perform a full investigation to determine the source of the contaminates being released from the Site.

f. Plaintiff Riverkeeper requests and petitions this Court to issue an enforcement order or injunction ordering Defendant, Tweden to remove all solid wastes dumped on the Site without a landfill permit authorizing the said dumping.

g. Plaintiff Riverkeeper requests and petitions this Court to issue an enforcement order or injunction ordering Defendant, Tweden to perform an effective remediation of contaminated groundwater on the Site to remove PFAS, including PFOA and PFAS, and other harmful pollutants from the groundwater and to prevent the discharge of these pollutants to Stoners Creek.

h. Plaintiff Riverkeeper requests and petitions this Court to issue an enforcement order or injunction ordering Defendant, Tweden to perform any and all other actions required or desirable to remove PFAS, including PFOA and PFAS, and other harmful pollutants from the Site and to prevent the discharge of these pollutants to Stoners Creek.

i. Plaintiff Riverkeeper requests and petitions this Court to assess a $64,618.00 (sixty-four thousand, six hundred eighteen dollars) civil penalty (*see* 40 CFR § 19) against Defendant, Tweden, for each violation and each day of continuing violation of the CWA for which Defendant is found liable pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a).

j. Plaintiff Riverkeeper requests and petitions this Court for an award of litigation costs, including reasonable attorney's fees and expert fees, as authorized by 33 U.S.C. § 1365(d) and 42 U.S.C. § 6972(e).

k. For such other, further or more general relief as this Court may deem appropriate.

Respectfully submitted this the 22nd day of July, 2024.

          s/ Mark E. Martin
          Mark E. Martin
          Alabama Bar No: 9361A41M

P.O. Box 1486
Oneonta, AL 35121
 Telephone: (205) 516-9350
mmartin@markemartin.com

/s/ Andrea Taylor McKellar
Andrea Taylor McKellar (BPR #19618)
McKellar Law Group, PLLC
117 28th Avenue North
Nashville, TN 37203
Telephone: 615.866.9828
Facsimile: 615.866.1278
andie@.mckellarlawgroup.com

***Attorneys for Plaintiff Tennessee Riverkeeper, Inc.***

18