IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE RIVERKEEPER, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-00886 |
| | ) | Judge Aleta A. Trauger |
| WALLACE D. TWEDEN, TRUSTEE of | ) | |
| the WALLACE D. TWEDEN 1991 | ) | |
| REVOCABLE TRUST, and 4M | ) | |
| ACQUISITIONS 16-1, LLC, | ) | |
| | ) | |
|    Defendants. | ) | |

## MEMORANDUM

This case is an environmental citizen suit brought under the Clean Water Act and the Resource Conservation and Recovery Act. For the reasons set forth herein, the defendant's pending Motion to Dismiss (Doc. No. 18) will be granted under Rule 12(b)(1), for lack of subject matter jurisdiction.

### I. FACTS AND PROCEDURAL HISTORY

The plaintiff, Tennessee Riverkeeper, Inc. ("Riverkeeper"), is a non-profit corporation "dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries." (Doc. No. 2 at 3; Doc. No. 17 ¶ 21.) The filings do not clarify who the defendants are,[1] or for what purpose the property at issue is used. But the defendants concede that

---

[1] Defendant 4M Acquisitions 16-1, LLC has not complied with Local Rule 7.02's requirement that "[a]ny non-governmental business entity party must file a Business Entity Disclosure Statement," despite the court's Notice directing parties to do so. (Doc. No. 7.)

they own the property at issue in Hermitage, Tennessee, which abuts Stoner's Creek. (Doc. No. 19 at 2–3, 5.)

According to the Amended Complaint, "Tennessee Riverkeeper's scientist observed a discharge of pollutants into Stoners Creek on June 18, 2019, June 6, 2023, June 27, 2023, September 22, 2023, and March 26, 2024."[2] (Doc. No. 17 ¶ 57.) In addition, Riverkeeper's standing declarant, Rus Snijders, "documented multiple discharges of discolored water into Stoners Creek on April 3, 2018 and April 4, 2019." (*Id.* ¶ 58.) The alleged discharges came from "seeps or springs on the banks of the creek flowing into the creek."[3] (*Id.* ¶ 59.) Riverkeeper tested water samples its scientist collected on June 27, 2023 and September 22, 2023. (*Id.* ¶ 61.) Laboratory tests revealed the presence of per- and polyfluoroalkyl substances ("PFAS") in both samples and "detectable levels" of other chemicals in the June sample. (*Id.* ¶¶ 62–63.) "PFAS" refers to a class of man-made chemicals, which, the plaintiff states, may harm humans and animals. (*Id.* ¶¶ 65–66.)

On March 25, 2024, Riverkeeper sent the defendants a Notice of Intent to Sue Letter ("Notice"). (*Id.* ¶ 12.)[4] According to Riverkeeper, after it gave notice, "the violations complained of have not ceased, and are ongoing, and neither the EPA nor the State of Tennessee has commenced and diligently prosecuted . . . [an] enforcement action." (*Id.* ¶ 16; *see also id.* ¶ 69 ("The violations set forth in the paragraphs above and in the March notice are continuing and

---

[2] In the Amended Complaint's Count One, Riverkeeper states that the defendants also discharged pollutants on September 9, 2024. (Doc. No. 17 ¶ 73.) The Amended Complaint contains no further facts regarding the alleged September 9, 2024 discharge.

[3] The plaintiff also states that the "discharges are from a discrete fissure in the rocky bluff." (Doc. No. 17 ¶ 74.) It is unclear whether this is consistent with the plaintiff's description of the discharges emanating from "seeps or springs on the banks of the creek."

4 Riverkeeper's Notice is in the record at Doc. No. 1-1.

2

ongoing, or are likely to recur, as of the date this Complaint is being filed.").) On July 22, 2024, the plaintiff filed a Complaint (Doc. No. 1), which it subsequently amended (Doc. No. 17). The defendants have filed a Motion to Dismiss (Doc. No. 18) and accompanying Memorandum (Doc. No. 19), to which the plaintiff has filed a Response (Doc. No. 22). The defendants did not file an optional reply.

The Amended Complaint sets forth three counts: violations of the Clean Water Act ("CWA") (Doc. No. 17 ¶¶ 71–82 ("Count One")), violations of the Resource Conservation and Recovery Act ("RCRA") (*Id.* ¶¶ 83–91 ("Count Two")), and a claim for "injunctive relief" (*Id.* ¶¶ 92–98.) The defendants move for dismissal under Rules 12(b)(1) and 12(b)(6). First, the defendants argue that this court lacks subject matter jurisdiction over the RCRA claims because the plaintiff provided inadequate notice of intent to sue under the RCRA. (Doc. No. 19 at 7–9). Second, the defendants argue in the alternative that the plaintiff has failed to state a claim for the RCRA violations because "[t]here is simply no solid waste being disposed [of] at the Site." (*Id.* at 9–10.) Third, the defendants argue that the plaintiff has failed to state a claim under the CWA because it has not pleaded that the discharges came from a point source and because the violations are wholly past. (*Id.* at 11–15.) The defendants do not discuss Count Three, nor does the plaintiff's Response.

Because the court finds that the Amended Complaint is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, the court will grant the defendants' motion without reaching their arguments for dismissal under Rule 12(b)(6).

II.     LEGAL STANDARDS – RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.,* 491 F.3d 320, 330 (6th

3

Cir. 2007). When a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *See Gentek*, 491 F.3d at 330.

## III. STATUTORY BACKGROUND

Riverkeeper brings this case to enforce the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et. seq.*, commonly known as the Clean Water Act, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* The CWA's purpose is to "restore and maintain the . . . integrity of the Nation's waters" 33 U.S.C. § 1251(a), which it does by "insisting that a person wishing to discharge *any* pollution into navigable waters first obtain EPA's permission to do so." *Cnty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 170 (2020) (emphasis in original). Meanwhile, "Congress enacted the RCRA to end the environmental and public health risks associated with the mismanagement of hazardous waste." *United States v. Kentucky*, 252 F.3d 816, 822 (2001) (citation omitted). The RCRA does this by prohibiting treatment, storage, or disposal of hazardous waste without a permit. 42 U.S.C. § 6925(a). Both laws contain "citizen-suit" provisions, which authorize enforcement by citizens after notice and when the government has failed to bring an enforcement action. 33 U.S.C. § 1365 (CWA); 42 U.S.C. 6972 (RCRA).

### A. Clean Water Act

Congress passed the CWA to protect water quality through the establishment of: (i) federal "effluent limitations" to restrict the quantity, rate, and concentration of discharges of pollutants to waters of the U.S., and (ii) state "water quality standards" for all waters within state boundaries. *See Arkansas v. Oklahoma*, 503 U. S. 91, 101 (1992). The CWA's objective is to eliminate the "discharge of pollutants into the navigable waters." 33 U.S.C. § 1251. "Discharge of

4

a pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

The CWA imposes "a default regime of strict liability," according to which the discharge of pollutants into waters of the United States are allowed only if subject to a specific exception. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015) (quoting *Piney Run Pres. v. Cnty. Comm'rs*, 268 F.3d 255, 268–69 (4th Cir. 2001)); *see* 33 U.S.C. § 1311(a) (prohibiting the "discharge of any pollutant"). The "principal exception" to the CWA's blanket prohibition on discharges is those authorized by a permit granted pursuant to the National Pollutant Discharge Elimination System ("NPDES"). *StarLink Logistics Inc. v. ACC, LLC*, 642 F. Supp. 3d 652, 685 (M.D. Tenn. 2022) (Richardson, J.), *aff'd in part, rev'd in part on other grounds and remanded*, 101 F.4th 431 (6th Cir. 2024); *see* 33 U.S.C. §§ 1311(a), 1342; *see also S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 101 (2004) (noting that the CWA "requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters"). "Discharge of pollutants into the waters of the United States without an NPDES permit, or in violation of the terms of an NPDES permit, is typically a violation of the CWA." *Tenn. Clean Water Network v. Tenn. Valley Auth.*, 206 F. Supp. 3d 1280, 1285–86 (M.D. Tenn. 2016) (Crenshaw, J.) (citing 33 U.S. §§ 1311(a), 1342(a), 1365(f)(6)).

**B.     The Resource Conservation and Recovery Act**

The RCRA "is a comprehensive statute governing the generation, transportation, storage, and treatment of hazardous wastes." *United States v. Ekco Housewares, Inc.*, 62 F.3d 806, 809 (6th Cir. 1995). Its primary purpose is "to reduce the generation of hazardous waste" in the first place and "to ensure the proper treatment, storage, and disposal of that waste which is nonetheless

5

generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). Pursuant to these statutory objectives, the RCRA contemplates that states will develop solid waste management plans pursuant to regulatory guidelines promulgated by the EPA. *See* 42 U.S.C. §§ 6941–6949. RCRA requires that such plans must, among other things, prohibit the establishment of open dumps or operation of existing open dumps. *See* 42 U.S.C. §§ 6943–6945.[5]

C.  **Citizen Suits**

The EPA and the states have primary enforcement authority under the CWA and RCRA. *See S. Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 28 F.4th 684, 690 (6th Cir. 2022). The CWA grants the government a significant "enforcement arsenal," including "administrative, civil, and criminal sanctions." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 53 (1987). In addition, however, the CWA includes a citizen suit provision that permits a private party with a constitutionally sufficient injury to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a). A private party's authority

---

5 The RCRA defines an open dump as "any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under [42 U.S.C. § 6944] and which is not a facility for disposal of hazardous waste." 42 U.S.C. § 6903(14). Section 6944, in turn, requires the EPA Administrator to:

> promulgate regulations containing criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as open dumps . . . . At a minimum, such criteria shall provide that a facility may be classified as a sanitary landfill and not an open dump only if there is no reasonable probability of adverse effects on health or the environment from disposal of solid waste at such facility.

42 U.S.C. § 6944(a). The aforementioned criteria are located at 40 C.F.R. §§ 257.1–257.4.

to enforce the CWA is narrower than a regulatory agency's. For example, a private party cannot file a citizen suit without giving a 60-day notice to the government and the potential defendant, and, if the government chooses to pursue the matter itself, the citizen plaintiff may not do so unless the government fails to prosecute the matter diligently. *See* 33 U.S.C. § 1365(b).

The RCRA has a "strikingly similar" citizen-suit provision to the CWA's. *Davis v. Sun Oil Co.*, 953 F. Supp. 890, 893 (S.D. Ohio 1996), *aff'd*, 148 F.3d 606 (6th Cir. 1998). It provides that any citizen may commence a civil action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the Act. 42 U.S.C. § 6972(a)(1)(A). It likewise contains a notice requirement and diligent prosecution bar. *Id.* § 6972(b).

1. *Bar on "wholly past" violations*

Because the defendant in a citizen-initiated case must be "alleged to be in violation," the citizen suit provisions of the CWA and the RCRA do "not permit citizen suits for wholly past violations." *Gwaltney*, 484 U.S. at 64; *see also Id.* at 57 (noting that Congress used the "identical ["to be in violation"] language in the citizen suit provisions of several . . . environmental statutes that authorize only prospective relief," including the RCRA citizen suit provision found in 42 U.S.C. § 6972(a)(1)(A)).[6]

The CWA and the RCRA authorize citizen suits against parties only if they are "alleged to be in violation" of a permit, standard, regulation, requirement, or similar. 33 U.S.C. § 1365(a); 42

---

[6] "Indeed, the structure of the citizen-suit provisions in the CWA and RCRA is 'essentially the same.' For this reason, courts commonly construe the citizen-suit provisions of the CWA and RCRA (and other federal environmental laws) in gross." *StarLink Logistics*, 642 F. Supp. 3d at 686 n.22 (quoting *Vernon Village, Inc. v. Gottier*, 755 F. Supp. 1142, 1152 (D. Conn. 1990) and citing *Walls v. Waste Res. Corp.*, 761 F.2d 311, 315–16 (6th Cir. 1985)).

U.S.C. § 6972. "Citizens must prove 'a state of either continuous or intermittent violation' to prevail." *Tamaska v. City of Bluff City, Tenn.*, 26 F. App'x 482, 485 (6th Cir. 2002) (quoting *Gwaltney*, 484 U.S. at 57); *see also Day, LLC v. Plantation Pipe Line Co.*, 315 F. Supp. 3d 1219, 1238 (N.D. Ala. 2018) ("The inescapable prospective orientation of the phrase 'in violation' is mirrored by the relief the CWA affords plaintiffs suing under the citizen-suit provision, which does not give citizen-plaintiffs the right to damages." (internal quotation marks omitted)). "It is well established that the CWA does not permit citizens' suits for violations that were wholly in the past." *Ward v. Stucke* ("*Ward II*"), No. 21-3911, 2022 WL 1467652, at *3 (6th Cir. May 10, 2022) (citing *Gwaltney*, 484 U.S. at 57). "Citizens who bring CWA citizen suits only for past violations lack standing." *Ward v. Stucke* ("*Ward I*"), No. 3:18-cv-263, 2021 WL 4033166, at *5 (S.D. Ohio Sept. 3, 2021) (citing *Ailor v. City of Maynardville*, 368 F.3d 587, 596–97 (6th Cir. 2004)), *aff'd*, No. 21-3911, 2022 WL 1467652 (6th Cir. May 10, 2022). "Litigants bringing citizen suits can establish an ongoing violation in two ways: '1) by proving violations that continue on or after the date the complaint is filed, or 2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.'" *Ward I*, 2022 WL 1467652, at *2 (quoting *Tamaska*, 26 F. App'x at 485).

At the same time, the Supreme Court has recognized that standing is conferred by good faith allegations of continuous or intermittent violations. *Gwaltney*, 484 U.S. at 64. "The analysis to determine whether sufficient proof exists to establish an ongoing violation is different from the one undertaken to determine whether an ongoing violation has been alleged for jurisdictional purposes." *Appalachian Voices, Inc. v. Nally & Hamilton Enters., Inc.*, No. CIV. 11-133-GFVT, 2012 WL 1084924, at *3 (E.D. Ky. Mar. 30, 2012); *see also Ohio Pub. Int. Rsch. Grp.*, 963 F. Supp. at 640 (recognizing that "proving on-going violations of environmental standards at the

pleading stage, without the benefit of discovery, would often be an insurmountable obstacle to the initiation of a citizen suit"). But even on a motion to dismiss, it is the plaintiff's burden to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And standing "cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Bearden v. Ballad Health*, 967 F.3d 513, 518 (6th Cir. 2020) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 617 (6th Cir. 2008)). "[N]or will 'naked assertion[s] devoid of further factual enhancement' suffice." *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (second alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If the plaintiff does not have standing, the court lacks subject matter jurisdiction over the plaintiff's claims. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385–86 (6th Cir. 2020) (citing *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017)).

## IV.  DISCUSSION

### A.  The Resource Conservation and Recovery Act Claims

The defendants argue that the "Plaintiff's RCRA claim fails at the outset because Plaintiff never provided Defendants a Notice of Intent to Sue for any violation of RCRA." (Doc. No. 19 at 7.) The court agrees.

The RCRA authorizes any citizen to commence a civil action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" the Act. 42 U.S.C. § 6972(a)(1)(A). However, the RCRA provides that no action may be filed "under subsection (a)(1)(A) of this section . . . prior to 60 days after the plaintiff has given notice of the violation to . . . (i) the Administrator [of the EPA]; (ii) the State in which the alleged violation occurs; and (iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order." 42 U.S.C. § 6972(b)(1)(A). The RCRA's implementing regulations contain requirements concerning the

9

service and contents of the notice. 40 C.F.R. §§ 254.2–254.3. These regulations, published in the Code of Federal Regulations, "have the force and effect of law." *Chute v. Montgomery Cnty. Shooting Complex*, No. 3:12-cv-0776, 2013 WL 681987, at *3 (M.D. Tenn. Feb. 25, 2013) (quoting First *Tenn. Bank Nat'l Assoc. v. Barreto,* 268 F.3d 319, 329 (6th Cir. 2001)).

The RCRA's implementing regulation specifies the required contents of such notices:

> Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under this Act shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 254.3(a)

"In the RCRA context, the Supreme Court held that 'the notice and 60–day delay requirements are mandatory conditions precedent to commencing suit under the . . . citizen suit provision; a district court may not disregard these requirements at its discretion.'" *Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473, 478 (6th Cir. 1995) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)); *see also Bd. of Trs. of Painesville Twp. v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 1999) (describing the CWA's citizen suit notice provision as "long recognized as a jurisdictional prerequisite to maintaining a cause of action") (citing *Walls v. Waste Resource Corp.*, 761 F.2d 311, 314, 316 (6th Cir. 1985)). Accordingly, "[i]f a plaintiff fails to provide sufficient notice, a district court 'must dismiss the action as barred' under the CWA." *S. Side Quarry*, 28 F.4th at 694 (quoting *United Musical Instruments*, 61 F.3d at 478).[7]

---

[7] The court notes that, in an unpublished opinion, the Sixth Circuit equivocates about whether pre-suit notice requirements are truly jurisdictional. *Cooper v. Toledo Area Sanitary Dist.*, 797 F. App'x 920, 922 n.1 (6th Cir. 2019) (noting that the Supreme Court in *Hallstrom* "declined to determine whether the pre-suit notice requirement was jurisdictional or simply mandatory under

10

"[T]o satisfy the notice requirement, the notice must contain sufficient information to allow Defendants to identify all pertinent aspects of its [alleged] violations without extensive investigation.'" *Cooper v. Toledo Area Sanitary Dist.*, 797 F. App'x 920, 924 (6th Cir. 2019) (quoting *Sierra Club v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 504 F.3d 634, 644 (6th Cir. 2007)). "[P]laintiffs bringing suit under 33 U.S.C. § 1365 must provide notice of the *specific* limitations, standards, or orders alleged to be violated."[8] *Frilling v. Vill. of Anna*, 924 F. Supp. 821, 833 (S.D. Ohio 1996) (emphasis in original); *see also City of Ashtabula v. Norfolk S. Corp.*, 633 F. Supp. 2d 519, 526 (N.D. Ohio 2009) ("By specifically describing the acts it believes violate the law, *and* linking these acts to CWA Section 402 . . . Plaintiff's notice letter has sufficiently provided notice of the *specific* standard, limitation, or order violated." (emphases added)). The Sixth Circuit, in particular, takes a "more restrictive view of the notice requirement" than some other appellate courts. *See Harpeth River Watershed Ass'n v. City of Franklin*, No. 3:14-cv-1743, 2016 WL 827584, at *12 (M.D. Tenn. Mar. 3, 2016) (Sharp, J.) (comparing the Sixth Circuit with the Ninth

---

the statute" and noting that several sister circuits have held that the notice requirement is nonjurisdictional); *see also United Musical Instruments*, 61 F.3d at 478 n.6 (similarly discussing the Supreme Court's decision not to determine whether notice is "jurisdictional in the strict sense of the term") (quoting *Hallstrom*, 493 U.S. at 31). *But accord StarLink Logistics*, 101 F. 4th 431, 450 (6th Cir. 2024) (passingly and impliedly referring to the RCRA's pre-suit notice provision, 42 U.S.C. § 6972(b)(1)(A), as a "separate and distinct jurisdictional bar to citizen suits"). This court will treat the RCRA's pre-suit notice requirement as jurisdictional. But even if it were not, because, as the court explains below, the plaintiff has not satisfied the RCRA's statutorily mandated notice requirement, Riverkeeper's RCRA claims would be dismissed anyway. *Cf. StarLink Logistics*, 642 F. Supp. 3d at 687 n.23 (describing the controversy at length and noting a *de minimis* functional difference between different forms of dismissal in cases like this).

[8] The notice requirements contained in the RCRA citizen suit provision are substantially similar to those outlined in the CWA. *Accord Chute v. Montgomery Cnty. Shooting Complex*, No. 3:12-cv-0776, 2013 WL 681987, at *3 (M.D. Tenn. Feb. 25, 2013); *see also Ass'n Concerned Over Res. & Nature, Inc. v. Tenn. Aluminum Processors, Inc.*, No. 1:10-00084, 2011 WL 1357690, at *8 (M.D. Tenn. Apr. 11, 2011) (Haynes, J.).

Circuit); *see also Frilling v. Vill. of Anna*, 924 F. Supp. 821, 833 (S.D. Ohio 1996) (comparing the Sixth Circuit with the Third Circuit).

In this case, the plaintiff's Notice makes no reference to the RCRA or its implementing regulations by name or citation. It makes no reference to an "open dump" or any variation thereof, which forms the basis of its eventual RCRA cause of action. (*See* Doc. No. 17 ¶¶ 1, 6, 43, 45–52, 83–86.)

The defendants argue that Riverkeeper did not provide notice of intent to sue for a RCRA violation and that this court therefore lacks subject matter jurisdiction over the plaintiff's RCRA claims. (Doc. No. 19 at 7–9.) Specifically, the defendants state, the Notice did not satisfy the Regulations' requirement that Riverkeeper give notice of the "specific RCRA permit or standard violated or the activity alleged to constitute the violation." (*Id.* at 8.)

The plaintiff acknowledges that the Notice did not "expressly cite[] [RCRA] by name[,] [b]ut Defendants were put on notice of facts establishing violations of that Act." (Doc. No. 22 at 3.) That is, according to the plaintiff, defendants "were put on notice that they were discharging these pollutants from their property into waters of the United States, a violation of both RCRA and the Clean Water Act." (*Id.* at 2.) The plaintiff states that the alleged violations of the CWA it specified "*can* also constitute a violation of RCRA." (*Id.* at 13 (emphasis added) (citing 40 C.F.R. § 257.3-3).) Therefore, the plaintiff argues, the Notice satisfied the Regulations' requirements that it include sufficient information to permit the defendants to identify the specific RCRA violation it allegedly violated and the activity constituting the violation. (*Id.*) Put slightly differently, Riverkeeper argues that it need not mention RCRA in its Notice at all. Rather, Riverkeeper argues, it properly set out the underlying facts of the violations, and, because "Defendants are presumed

12

Case 3:24-cv-00886    Document 26    Filed 03/06/25    Page 12 of 19 PageID #: 203

to know the law," the Notice contained sufficient information to permit the recipient to identify the regulation allegedly violated and the activity alleged to constitute a violation. (*Id.* at 14)

The court is not persuaded by Riverkeeper's *they-know-what-they-did* argument.[9] A letter that does not "ascribe any specific, unlawful conduct in violation of a specific regulation to potentially cure . . . leave[s] one uninformed which . . . regulatory violations, if any, apply." *Stark-Tusc-Wayne Joint Solid Waste Mgmt. Dist. v. Am. Landfill, Inc.*, No. 5:10-cv-00119, 2012 WL 4475444, at *4 (N.D. Ohio Sept. 26, 2012). Such a "notice letter does not provide the [m]oving [d]efendants with sufficient information of a specific regulatory violation." *Id.*; *see also S. Side Quarry*, 28 F.4th at 696 ("But without a specific allegation that [the defendant] violated a permit's effluent standards or limitations, [the plaintiff] can't satisfy the notice requirement . . . ."). Riverkeeper's Notice gives no hint that Riverkeeper would sue under the RCRA—let alone under which provision or implementing regulation. Plaintiff's Notice "provides no assistance regarding what provisions of a statute, regulation, or permit have been violated." *Karr v. Hefner*, 475 F.3d 1192, 1204 (10th Cir. 2007).[10]

---

[9] *Cf. HPIL Holding v. Zhang*, 734 F. Supp. 3d 664, 682 n.8 (E.D. Mich. 2024) (noting that, where the plaintiff did not plead a separate tort against a subset of defendants, but argued that the "pleadings are sufficient to appraise [sic] [them] of the torts underlying their conspiracy," the plaintiff's "'they know what they did' argument is unpersuasive and contradicts the fundamental purpose of pleading requirements").

[10] As the Tenth Circuit has noted, "identifying particular regulations [in notice letters] poses such a small burden for potential plaintiffs." *Karr*, 475 F.3d at 1203. The burden was even smaller in this case because, on the same day it sent the Notice to the defendants in this case, it sent a strikingly similar notice letter to a different defendant in a strikingly similar case. (*Compare* Doc. No. 1-1, *with* Exhibit A, *Tenn. Riverkeeper, Inc. v. Waste Connections of Tenn., Inc.*, No. 3:24-cv-883 (M.D. Tenn. July 22, 2024) (ECF No. 1-1).) The main difference between the letters is that the letter in *Tennessee Riverkeeper v. Waste Connections* contains a fifth section entitled "Open Dumping," which sets out several paragraphs describing, with specificity, why the site constitutes an open dump and why the actions described violate specific provisions of RCRA and its implementing regulations. In both cases, Riverkeeper alleges nearly identical violations of both the CWA and the RCRA. (*Compare* Doc. No. 17 ¶¶ 1–6, 54–57, 61–63, 70–98, *with* Complaint ¶¶

13

The argument that the defendant knows the law and therefore a citizen-plaintiff need not even gesture at the relevant environmental statute or regulations is unmoored from any precedent, legal principle, or policy this court can think of. And the plaintiff cites no case in support of its argument on this point. (*See* Doc. No. 22 at 12–14.) Riverkeeper has not satisfied the RCRA's notice requirement, and therefore the court must dismiss the RCRA claims. *See S. Side Quarry*, 28 F.4th at 694.

B.     **The Clean Water Act Claims**

The defendants move to dismiss Riverkeeper's CWA claims under 12(b)(6) for failure to state a claim. (*See* Doc. No. 18 at 2; Doc. No. 19 at 2.) But one of the arguments supporting its 12(b)(6) motion—that Riverkeeper has failed to allege an ongoing violation—would, if successful, deprive this court of subject matter jurisdiction over the CWA claims. Thus, the court treats the Rule 12(b)(6) motion to dismiss the CWA claims, in part, as a Rule 12(b)(1) motion.[11] The court must consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction. *See Allen v. Whitmer*, No. 21-1019, 2021 WL 3140318, at *2 (6th Cir. July 26, 2021) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)); *see also Naji v. Lincoln*, 665 F. App'x 397, 399 (6th Cir. 2016) ("It is a federal court's unflagging duty to verify that it has jurisdiction over the case before it.").

---

1–6, 54–57, 60–62, 67–05, *Tenn. Riverkeeper, Inc. v. Waste Connections of Tenn., Inc.*, No. 3:24-cv-883 (M.D. Tenn. July 22, 2024) (ECF No. 1).)

[11] *Accord, e.g.*, *Gibson v. Weltman, Weinberg & Reis Co.*, No. 1:19-CV-920, 2020 WL 12688226, at *1 (W.D. Mich. Nov. 16, 2020) (treating a Rule 12(b)(6) motion to dismiss for failure to state a claim, which argued that the plaintiff lacked standing, as a Rule 12(b)(1) motion for lack of subject matter jurisdiction); *Thibodeaux v. Bernhard*, No. 23-30405, 2024 WL 3181458, at *1 (5th Cir. June 26, 2024) (affirming the district court and noting that the defendants had filed a 12(b)(6) motion to dismiss for failure to state a claim, but the court converted it to a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

14

Case 3:24-cv-00886    Document 26    Filed 03/06/25    Page 14 of 19 PageID #: 205

The defendants move to dismiss, in part, because, they argue, Riverkeeper alleges only wholly past CWA violations, which do not give citizen-plaintiffs standing. (Doc. No. 19 at 14–15.) The court agrees.

Without a good faith allegation of continuous or intermittent violations, the court lacks jurisdiction over claims brought under the CWA's citizen-suit provisions. *Accord Ailor*, 368 F.3d at 598–99; *Pirgim Pub. Int. Lobby v. Dow Chem. Co.*, No. 95-CV-73286-DT, 1996 WL 903838, at *3 (E.D. Mich. Feb. 16, 1996) ("Being approximately 20 months prior to the filing of their complaint, and without any other factual allegations, plaintiffs' 'ongoing and continuous' allegation is rendered a mere conclusory statement upon which the Court's jurisdiction cannot rest. Accordingly, the Court finds that plaintiffs have failed to properly allege a continuous or intermittent violation of the permit[] . . . in good faith.").

As the Supreme Court stated in *Gwaltney*, Congress's decision to permit citizen suits based on good faith accusations reflected a "conscious sensitivity to the practical difficulties of detecting and proving chronic episodic violations of environmental standards." 484 U.S. at 65; *see also Ward I*, 2021 WL 4033166, at *7 ("proving on-going violations of environmental standards at the pleading stage, without the benefit of discovery, would often be an insurmountable obstacle to the initiation of a citizen suit"), *aff'd*, No. 21-3911, 2022 WL 1467652 (6th Cir. May 10, 2022) (citation omitted); *Ohio Pub. Int. Rsch. Grp. v. Laidlaw Env't Servs., Inc.*, 963 F. Supp. 635, 640 (S.D. Ohio 1996) ("The mere fact that good faith allegations of continuing violations in the complaint are premised in part on specific violations that occurred before the commencement of the suit does not render the allegations impotent for the purpose of supporting a finding of subject matter jurisdiction."). Thus, "Congress intended a good-faith allegation to suffice for jurisdictional purposes," such that a defendant does not need to "'be in violation' of the Act at the

15

commencement of suit; rather, the statute requires that a defendant be "*alleged* to be in violation." *Gwaltney*, 484 U.S. at 64–65 (emphasis in original).

But the "type of good faith allegation that the citizen suit provision envisions . . . is a good faith allegation of *facts* constituting a violation." *Tenn. Riverkeeper, Inc v. Afrakhteh*, No. 3:23-cv-00749, 2024 WL 2947255, at *6 (M.D. Tenn. June 11, 2024) (emphasis added). As the Supreme Court put it, a citizen-plaintiff need not prove the allegations when pleading them, but its allegations must be "well grounded in fact." *Gwaltney*, 484 U.S. at 65 (quoting Fed. R. Civ. P. 11 (1987)). This court, therefore, "construes the citizen suit provision to require a good faith assertion of facts constituting a continuous or recurring violation, not simply a good faith belief that the continuing violation requirement was satisfied." *Afrakhteh*, 2024 WL 2947255, at *6.[12]

Riverkeeper's Amended Complaint, however, contains no such good faith allegation of ongoing violations.[13] Riverkeeper has *stated* that the defendants' violations are ongoing. To wit:

---

12 *Accord Ohio Valley Env't Coal., Inc. v. Alex Energy, Inc.*, 12 F. Supp. 3d 844, 864–65 (S.D.W. Va. 2014) ("To meet the jurisdictional requirements, Plaintiffs must show that at the time they filed suit, they had a good-faith belief that each Defendant was in continuous or intermittent violation of the CWA . . . . In a jurisdictional sense, then, this good-faith belief is an element of each of Plaintiffs' claims.").

13 *Cf., e.g.*, *Clean Water & Air Legacy, LLC v. Tofte Wastewater Treatment Ass'n*, 649 F. Supp. 3d 764, 773 (D. Minn. 2023) (denying motion to dismiss where the complaint alleged violations "every year since 2018, which could conceivably rise to the level of intermittent or sporadic violations" and finding that "[i]f these violations happen every year, there is a reasonable likelihood they will continue that trend"); *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 258 (D.S.C. 2020) (finding allegations of ongoing violations where the plaintiff alleged that, "[a]s of the filing of this Complaint, after six months of concerted sampling, the Waterkeeper continues to find plastic pellets in significant concentrations at sites across the Charleston area, particularly those closest to the Facility."); *Ohio Pub. Int. Rsch. Grp.*, 963 F. Supp. at 641 ("[P]laintiffs have not only made reasonable contentions that there was an evidentiary foundation underlying their factual assertions of continuing violations, but they have provided evidence that this is the case. Having provided this proof, there is little question that its allegations were in good faith.").

16

> "[The defendants] *are violating* the CWA and RCRA due to *allowing the discharge of pollutants* . . . ." (Doc. No. 17 ¶ 2 (emphasis added).)
>
> "Since Riverkeeper gave notice, *the violations complained of have not ceased, and are ongoing*." (*Id.* ¶ 16 (emphasis added).)
>
> "The violations set forth in the paragraphs above and in the March notice *are continuing and ongoing, or are likely to recur*, as of the date this Complaint is being filed." (*Id.* ¶ 70 (emphasis added).)

The defendants argue that, "aside from the boilerplate recitation of ongoing violations, Plaintiff has alleged no allegations following the filing of the original complaint," and they point out that the last testing Riverkeeper conducted was ten months before filing the Complaint. (Doc. No. 19 at 14–15.) Riverkeeper responds that it has alleged continuing violations or a reasonable likelihood that the violations would recur. (Doc. No. 22 at 9.) Riverkeeper points to multiple observations of discharges, including one as recent as September 2024; two instances of testing; and repeated monitoring and documentation of pollution "that continued despite notice of violation." (*Id.* at 9–10.)

Riverkeeper alleges that its "scientist observed a discharge of pollutants into Stoners Creek on June 18, 2019, June 6, 2023, June 27, 2023, September 22, 2023, and March 26, 2024." (Doc. No. 17 ¶ 57.) In addition, Riverkeeper's standing declarant, Rus Snijders, "documented multiple discharges of discolored water into Stoners Creek on April 3, 2018 and April 4, 2019." (*Id.* ¶ 58.) While Count One states that the defendants also discharged pollutants on September 9, 2024, there are no facts supporting this statement—neither within the paragraphs constituting Count One, nor elsewhere in the Amended Complaint. The court cannot credit this bald assertion without any facts supporting it, including, at a minimum, what reason it has to believe that the discharge contained pollutants.

In support of its argument that it has alleged ongoing violations, Riverkeeper argues that, even setting aside the September 2024 observation, it has alleged that it observed discharges "after

17

providing Defendants with notice of intent to sue." (Doc. No. 22 at 10–11 (citing Doc. No. 17 ¶¶ 57, 73.) But other than the September 2024 observation, the only other discharge that Riverkeeper alleges observing is on March 26, 2024, the day *after* the Notice's date. The court can hardly credit Riverkeeper's claim that the "Defendants have done nothing to abate the continued discharges" based on an observation made the day after the date of the Notice. (Doc. No. 22 at 11.)

In addition, as the defendants point out, Riverkeeper's Amended Complaint contains allegations that Riverkeeper's scientist observed "a discharge of *pollutants*" on several dates. (*See* Doc. No. 17 ¶ 57 (emphasis added).) But the Complaint states that Riverkeeper's scientist observed "a discharge of *discolored water*." (Doc. No. 1 ¶ 57 (emphasis added).) This edit is unsupported by any other changes in the Amended Complaint. And, absent a claim that Riverkeeper's scientist is able to perceive, with the naked eye, the presence of the pollutants at issue, the court cannot credit the statement that Riverkeeper's scientist observed "pollutant" discharge as anything other than speculative—especially in light of the plaintiff's revision.

The court is left, then, with allegations of two positive tests for PFAS, with the most-recent one on September 22, 2023—ten months before Riverkeeper filed its Complaint. According to Riverkeeper, "the violations complained of have not ceased, and are ongoing" "or are likely to recur." (*Id.* ¶¶ 16, 70.) But other than conclusory statements, Riverkeeper has not alleged *facts* to support a plausible ongoing CWA violation.

Because the court finds that the plaintiff has alleged a wholly past violation, the court will not discuss the defendants' remaining arguments brought originally under Rule 12(b)(6).

C. **Claim for Injunctive Relief**

Riverkeeper's injunction claim (Doc. No. 17 ¶¶ 92–98 ("Count Three")) also fails, because "a request for an injunction is not a claim, but merely a remedy for a claim." *Tulis v. Orange*, 686 F. Supp. 3d 701, 717 (M.D. Tenn. 2023) (Crenshaw, C.J.) (citing *Madej v. Maiden*, 951 F.3d 364,

18

369 (6th Cir. 2020)), *aff'd*, No. 23-5804, 2024 WL 4117021 (6th Cir. Aug. 19, 2024); *accord Auto Konnect, LLC v. BMW of N. Am., LLC*, No. 18-14019, 2021 WL 2195125, at *6 (E.D. Mich. Jan. 6, 2021) ("This claim [for injunctive relief] must be dismissed because injunctive relief is a remedy, not a cause of action.") (citation omitted).[14] Because the substantive claims upon which the requested remedy is premised will be dismissed for lack of subject matter jurisdiction, the separate claim for injunctive relief based on those claims will also be dismissed.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss will be granted in its entirety based on lack of subject matter jurisdiction, and this case will be dismissed without prejudice.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[14] The court notes that the plaintiff included in its prayer for relief similar requests for injunctive relief. (*Compare* Doc. No. 17 ¶¶ 96–98 (seeking an injunction ordering the defendant to cease discharging pollutants and to remove unpermitted solid waste, and the assessment of civil penalties under the CWA), *with id.* at 17–18 (same)).